## MATTER OF MACCAUD

### In Deportation Proceedings

### A-13497481

*Decided by Board September 7, 1973*

(1) An immigration judge cannot make a conclusive judgment of citizenship from a passport (Irish).

(2) Where the country of deportation designated by the alien did not unconditionally accept him for admission, the immigration judge was correct in designating an alternate country of deportation in accordance with step 2 of section 243(a) of the Immigration and Nationality Act.

(3) Where an applicant for withholding of deportation under section 243(h) of the Act was afforded ample time (amounting, in the aggregate, to several months) to set forth the bases of his claim, yet he produced nothing beyond his original outline statement, which did not make a *prima facie* showing of persecution, refusal of the immigration judge to allow a full hearing was not an abuse of discretion nor was his denial of further adjournment in error.*

(4) Applicant has not established that because he aided some fellow prisoners (who were members of the Quebec Liberation Front) to become aware of and exercise their right under Canadian law, he would be subject to persecution within the meaning of section 243(h) of the Act, if deported to Canada, the country from which he entered the United States.*

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(17) as an alien who had previously been arrested and deported, no consent to reapply for admission having been granted.

ON BEHALF OF RESPONDENT:
Daniel J. Weinstein, Esquire
Legal Aid Bureau of Buffalo, Inc.
205 Walbridge Building
Buffalo, New York 14202
(Brief filed)

ON BEHALF OF SERVICE:
David L. Milhollan
Appellate Trial Attorney
Gordon W. Sacks
Trial Attorney
(Brief filed)

The respondent appeals from the December 27, 1972 decision of the immigration judge in which he ordered that the respondent be deported. The immigration judge specified Canada as the place of

---

* Reaffirmed, 500 F.2d 355 (C.A. 2, 1974).

429

deportation, unless the Republic of Ireland should advise the Attorney General of its willingness to accept the respondent into its territory before deportation to Canada could be effected. In that case, deportation would be to the Republic of Ireland. He also denied the respondent's application for withholding of deportation to Canada under section 243(h) of the Immigration and Nationality Act. We agree with the immigration judge; the appeal will be dismissed.

The respondent, a native and citizen of Canada, conceded deportability on the charge contained in the Order to Show Cause at his original deportation hearing on January 31, 1972, and was permitted to designate the country to which he should be deported, "... if that country [was] willing to accept him into its territory . . .," section 243(a), Immigration and Nationality Act. [1] He designated the Republic of Ireland, and since he alleged he was a citizen of that country and had an Irish passport, the immigration judge did not at that time specify an alternate country of deportation in hopes of obviating, if possible, an extended hearing on the claim of persecution under section 243(h) which the respondent was prepared to make if ordered deported to Canada. Following the deportation hearing, the respondent was convicted under section 276 of the Act for entering the United States without the consent of the Attorney General after previously having been deported.

When the Republic of Ireland did not accept the respondent, the Service moved to reopen the proceedings so that the immigration judge might specify an alternate country of deportation. It is from the decision rendered at the conclusion of the reopened hearing that the respondent appeals.

In his appeal the respondent contends that: (1) the immigration judge should have found him to be a citizen of Ireland; (2) the Attorney General did not make a proper inquiry of Ireland and therefore has not received a refusal to accept the respondent; (3) Ireland is willing to accept him; (4) if Ireland is not willing to

---

[1] Sec. 243. (a) The deportation of an alien in the United States provided for in this Act, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States .... If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. . . .

430

accept the respondent, the Attorney General should impose sanctions against Ireland pursuant to section 243(g) of the Act; (5) the immigration judge abused his discretion in not allowing a full hearing, as required by 8 CFR 242.17(c), on the respondent's claim that he would be persecuted if returned to Canada; (6) the immigration judge erred in not granting an adjournment for the respondent's attorney to prepare his presentation of the persecution claim; and (7) the immigration judge erred in not granting withholding of deportation to Canada under section 243(h). We find these contentions to be without merit and shall dispose of each in turn.

With reference to contention (1), we agree with the immigration judge's analysis of the issue (Decision of immigration judge, p. 10). While possession of a United States passport may be some evidence of United States citizenship, it is not conclusive proof thereof, and may be overcome by sufficient evidence that the holder of the passport is not a citizen, *Urtetiqui v. D'Arcy*, 34 U.S. 692, 699 (1835); *Peignand v. INS*, 440 F.2d 757, 760 (C.A.1, 1971); *In re Gee Hop*, 71 F. 274, 276 (N.D. Cal. 1895); *Matter of Rocha*, 10 I. & N. Dec. 770, 772-73 (BIA, 1964); *Matter of H-H-and H-M-*, 3 I. & N. Dec. 680, 683 (BIA, 1950). Thus, he may be refused admission despite his possession of a passport, *In re Gee Hop*, supra; *Matter of H-H- and H-M-*, supra. Nor is a passport a judgment of citizenship, *Matter of H-H- and H-M-*, supra at 688.

The law of Ireland appears to be the same as United States law on this point, and may be presumed to be the same in the absence of any evidence tending to show otherwise, C. McCormick, *Handbook of the Law of Evidence* § 326 (1954). Therefore, the immigration judge was in no position to make a finding as to the respondent's Irish citizenship.

Regarding contentions (2) and (3), the statute does not require a refusal by the country designated by the respondent. If the Attorney General is not notified that the designated country is *willing to accept* the deportee within three months, the respondent is to be deported to the alternate country specified by the immigration judge, section 243(a), Immigration and Nationality Act.

The record contains several letters bearing on the question of acceptance of the respondent by the Irish Government (Exs. 3, 4, 5, 6, and 7, statement of August 28, 1972, and letter of November 2, 1972 from the Department of Justice, Dublin). The Immigration and Naturalization Service request, made on February 17, 1972, is part of the record as Exhibit 4. The reply chiefly relied on by the Service is Exhibit 3, dated September 21, 1972, which states: "The Irish authorities have confirmed their refusal to accept Mr. MacCaud on deportation." It also characterizes the August 28, 1972

431

statement from the Department of Foreign Affairs (upon which the respondent bases his contention that there has been no refusal) as a background note for press releases and not a formal statement of the Irish government. That statement said that all Irish citizens have the right to enter Ireland subject to normal immigration procedures and checks at the port of entry, and that a decision not to supply a special travel document does not involve a denial of entry into Ireland. The last letter on the subject, on stationery of the Department of Justice, Dublin, dated November 2, 1972, signed illegibly by an unidentified signer, restates what was said in the unofficial background note of August 28, 1972. This is not an unconditional acceptance as required by the statute, *U.S. ex rel. Tom Man v. Murff*, 264 F.2d 926, 928 (C.A. 2, 1959); *U.S. ex rel. Wong v. Esperdy*, 197 F. Supp. 914, 917 (S.D.N.Y. 1961); *Lu v. Rogers*, 164 F. Supp. 320, 321 (D.D.C.), aff'd 262 F.2d 471 (D.C. Cir. 1958). Ireland ordinarily issues a special travel document to deportees to that country whether or not they have Irish passports.

The refusal to issue a special travel document may be due to the fact that, while the respondent indicated that his Irish citizenship rests upon his father's birth in Dublin (Tr. p. 8), two documents executed by the respondent on April 30, 1963 (Form I-217, Information for Travel Document or Passport, Ex. 4; and the respondent's affidavit, Ex. 8) show that his father was born in Scotland. Since Ireland has not unconditionally accepted the respondent for admission and he will be subject to ordinary immigration inspection, and since there may be some doubt as to the validity of his claim to Irish citizenship, we agree with the immigration judge that Ireland has not demonstrated willingness to accept the respondent and therefore find that the immigration judge was correct in designating an alternate country of deportation in accordance with step 2 of section 243(a).

Concerning contention (4), the respondent petitioned the United States District Court for the District of Connecticut for a writ of mandamus ordering the Attorney General to invoke sanctions against the Republic of Ireland, pursuant to section 243(g) of the Act, for its refusal to accept the respondent upon deportation. The request for mandamus was denied on the merits, *MacCaud v. United States*, 354 F. Supp. 872 (D. Conn. 1972), and the respondent has filed an appeal with the Second Circuit Court of Appeals. Until the Court of Appeals acts, the District Court's decision stands.

With regard to contentions (5) and (6), 8 CFR 242.17(c) allows the respondent in deportation proceedings 10 days to apply for withholding of deportation pursuant to section 243(h) and provides: "... The application shall consist of respondent's statement setting forth the reasons in support of his request. The respondent shall

be examined under oath in his application and may present such pertinent evidence or information as he has readily available. The respondent has the burden of satisfying the [immigration judge] that he would be subject to persecution on account of race, religion, or political opinion as claimed ... ."

As early as January 31, 1972 at the original hearing, the respondent expressed an intention to apply for withholding of deportation under section 243(h) if deported to Canada. When Ireland would not accept the respondent, the Service moved to reopen so that the immigration judge might specify an alternate country for deportation. The motion was granted on July 17, 1972 over the respondent's opposition.

The reopened hearing was first set for October 1972 in Connecticut, where the respondent was imprisoned after his conviction under section 276 of the Act. The respondent objected to the place of the hearing in a letter dated September 24, 1972, since his witnesses were nearer to the Buffalo area. In an October 18, 1972 letter he objected to a proposed bipartite hearing, part in Connecticut and part in Buffalo. Finally the Government notified him that the reopened hearing would take place in Buffalo on November 6, just three days after the respondent's release from prison. The respondent replied that he needed more time to hire an attorney to prepare his case, but he submitted a seven-page outline of his claim. He wrote in ink at the end of the statement: "This is an outline only. Witnesses will be called to substantiate and elaborate these facts," (Ex. 10, p. 7).

At the reopened hearing, almost four months after the motion to reopen was granted, the respondent again requested more time. The hearing was adjourned till the following day, when the immigration judge found that even if witnesses did testify and prove that all of the facts alleged in the respondent's persecution claim were true, the respondent would not be eligible for relief under section 243(h). However, he granted the respondent three additional weeks to amplify his claim with documents, affidavits of witnesses, and additional grounds. The respondent submitted nothing beyond his original claim.

We agree with the immigration judge that it would be futile and wasteful to hold a further hearing on this claim of persecution. The respondent had ample time, amounting to several months, to set forth the bases of his claim, yet he produced nothing in all that time beyond his original outline, which in our opinion does not make a prima facie showing of persecution.

The regulation should not be interpreted to require fruitless proceedings. Further proceedings to prove the facts alleged in the respondent's outline of his claim would not change the outcome.

The immigration judge did not abuse his discretion by refusing to allow a full hearing, and further adjournment was not necessary.

As for contention (7), the respondent avers that when he was in jail in Canada before his last entry into the United States, he aided some fellow prisoners to become aware of and exercise their rights under Canadian law. Some of these fellow prisoners were members of the Quebec Liberation Front (FLQ). He alleges that because of this he was beaten by prison guards and will be subject to similar ill treatment if returned to Canada. There is nothing in the record which shows that the respondent has been or will be persecuted because of this tenuous association with the FLQ.

We agree with the immigration judge's analysis of the persecution claim on pages 6–10 of his decision. While there is no precise definition of persecution in the statute, it has been defined in the courts as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive," *Kovac v. INS*, 407 F.2d 102, 107 (C.A. 9, 1969). Criminal prosecution is not persecution unless it is politically motivated, *Soric v. INS*, 346 F.2d 360, 361 (C.A. 7, 1965); *Kovac v. INS*, supra at 104; *Matter of Janus and Janek*, 12 I. & N. Dec. 866, 876 (BIA,1968). The respondent has not adequately shown that he was politically motivated in leaving Canada or that he has a reasonable fear of being persecuted upon his return. If he is prosecuted when he returns to Canada, it apparently will be for escaping from jail or breaching parole. Such prosecution does not seem to be politically motivated. In fact, the respondent has stated that prior grievances have been redressed by parliamentary enactments, that the prison guards alleged to have beaten him have been prosecuted (albeit they were acquitted), and that he was transferred at his request to different institutions for his protection.

Furthermore, persecution must be at the hands of the government, unless the government cannot control the persecutors, *Rosa v. INS*, 440 F.2d 100 (C.A. 1, 1971); *Matter of Tan*, 12 I. & N. Dec. 564, 568 (BIA, 1967); *Matter of Eusaph*, 10 I. & N. Dec. 453, 455 (BIA,1964). We are satisfied that the respondent has failed to show a well-founded fear that his life or freedom will be threatened in Canada on account of his race, religion, nationality, membership in a particular social group, or political opinion. See *Matter of Dunar*, Interim Decision No. 2192 (BIA,1973). We therefore conclude that the respondent will not be subject to persecution if he is deported to Canada.

In view of the foregoing we shall affirm the decision of the immigration judge and dismiss the appeal.

**ORDER:** The appeal is dismissed.